Our next case for today is 2019-2148 Boeing v. United States. Counsel, please proceed. Thank you, Judge Moore, and may it please the court. The simplest and most straightforward way for the court to resolve this appeal would be to hold that the decision below must be reversed because the trial court refused to follow this case is an all-force with GHS with one exception that actually makes Boeing's case even stronger. As in GHS, Boeing claims that a regulation applicable to the administration of its contract with the government is inconsistent with the governing statute. As in GHS, the government argues that the contractor had waived its challenge to the regulation by failing to object to the contracting officer before entering the contract. As in GHS, it is undisputed that the challenge regulation is mandatory. The contracting officer had no authority to agree to disregard it as the government admits twice that pages 12 and 50 in the red brief. In GHS, this court flatly rejected the government's waiver argument going so far as to hold that it was frivolous and the court should do the same here. Boeing urged the court below to follow GHS but the short analysis justifying rejection of the defense did not clearly indicate why the government's waiver defense was deemed to be frivolous. That was error twice over. First, the GHS court did explain why the government's waiver defense was frivolous. Mr. Kirk, this is Judge Taranto. Can I ask you questions about something other than simply interpreting GHS to try to get a fix on the body of law about waiver which includes but is not limited to GHS? First of all, are any of the other waiver cases that are being relied on ones in which the provision being challenged on the later appeal occurred in a regulation and where we said that could not have been fixed by the contracting officer? GHS says that, Your Honor. Any other cases? I'm sorry, I should have emphasized the other. Off the top of my head, I'm not thinking of another but I'm not certain that there isn't another. Okay. Part of what I'm trying to figure out is the relationship between your argument about non-negotiability and your argument about, I'm going to summarize it as lack of non-negotiability back in whenever these contracts were entered into brought a court challenge to get the regulation ruled invalid, thereby allowing the contracting officer to negotiate about the treatment of possible future cost accounting changes. Well, only two conceivable proceedings for making such a challenge have been identified by anyone in this case, either a bid protest or an APA challenge and it is clear as a matter of law that neither was available to Boeing. A bid protest unquestionably would have been dismissed as unright because it was wholly speculative at the time of contracting that the challenge regulation would even be applied during the administration of Boeing's contract. This regulation only applies if several circumstances come together. Number one, the contract... Right, but I guess part of what I'm trying to understand about that, and I take the general point which has some appeal to it, but aren't there rather a lot of contract provisions or solicitation provisions that are contingent on possible but not certain developments during the administration of the contract? Judge Toronto, there are some, but don't forget, this isn't a contract provision. The challenge regulation was not incorporated into the contract either by reference or by text and I won't speak to the solicitation because the government didn't introduce it into evidence and it's the government's burden, so I think the solicitation is off the table. Beyond that, Your Honor, I would direct you to the cost accounting statute itself which confirms in terms that the forum for raising a dispute over the price adjustment, which is the underlying dispute here, required by changes in cost accounting practices are to be resolved pursuant to the Contract Disputes Act, not in a bid protest. That's section 1503A. And more generally, this court has recognized that it is well settled that matters of contract administration must be challenged in a CDA action, not in a bid protest under the Tucker Act. That's Coast Professional. And I think the rightness considerations are what drive that rule. And to go back to, Judge Toronto, your initial question of how these points fit in with the points we made about GHS, our point is there was no forum, not the contracting officer, not a bid protest, not an APA action. And by the way, the cost accounting statute specifically precludes APA challenges. That's in 1503G. And our overall point on this is that there was no forum that if the contracting officer or a bid protest or an APA action thought we were right on the merits, could have provided us the relief. I mean, the essence of waiver is you had an earlier opportunity to get your objection considered. Boeing had no such opportunity. And, Your Honor, I would like to turn to a second independent ground. Can I just, I just want to press this just a little bit further. Your contention about the invalidity of the regulation is, as far as tell me if I'm wrong, essentially a pure legal contention. Why exactly under Abbott Labs or whatever the current rightness standard is, would a suit challenging that at the time of negotiating the contract not have been right? And if successful, allowing then the contracting officer to make clear in the contract that the kind of aggregation that you think the statute requires would in fact be available? Because it's well settled that a bid protest is not right for review when it's contingent on future events. I would direct you to the system applications case that we cited, 691F3rd at 1383 for a recent statement of that rule. And here there is no question that several events had to take place during contract administration for this dispute to even come up. Beyond that, Your Honor, I would direct you to consider the practical implications of the rule that the court below adopted. Contractors on pain of waiver would have to canvas the United States Code, the FAR, the defense FAR to identify any provision that might conceivably be applied at some point during the administration of the contract and seek what essentially would be an advisory opinion from the Court of Federal Claims or the GAO in a bid protest. So counsel, this is Judge Moore, do you believe that you would have a harder case in light of these arguments you're making if these facts were like AT&T where this particular FAR regulation was expressly called out in the contract as, and don't forget, we intend to enforce this regulation in particular against you? Well, Your Honor, I think that isn't like AT&T. I think that's like GHS. So I think I would still win because in GHS the challenge regulation was actually incorporated into the contract and this court still held that the waiver finding argument was frivolous. In AT&T, what was being challenged was something very different. It was the fixed price nature of the contract and the holding in AT&T, too, rested squarely on the court's findings, holdings that AT&T had a remedy available to it because the contracting officer had the power to change it from fixed price to a cost contract if it agreed with AT&T. This is Judge Chen. Hi there. Is that true that the contracting officer in AT&T had the discretion to convert what appeared to be a solicitation for a fixed price contract into a cost reimbursement contract? Yes, Your Honor. I think he may have had to... Is that a common thing for contracting officers to convert a proposed fixed price contract into a cost reimbursement contract? It's incredibly uncommon. And the only circumstance I can think of where a contracting officer might do that is where it is convinced by the argument that AT&T was advancing that the law forbid a fixed price contract. If the contracting officer agreed that AT&T was right on the merits of that, then I think the contracting officer would be compelled to switch it to a cost plus. But I certainly agree that would be rare. And with that, I think I heard my buzzer. So, Judge Moore, if there's no further questions... Can I ask one quick question? This is Judge Chen. You say there's a provision of 1503 that you say the regulation violates, that the statutory provision is part of the contract. Why is that so? Well, I think there's settled law on... And this is obviously a merits question, Judge Toronto, but there's settled law... Well, go on. But the reason I ask it is that you say the statute is part of the contract, but the regulation is not part of the contract, and I'm trying to understand why there's a difference. Well, there's two different regulations that you need to divide here. Regulation number one is what's called the CAS clause, which is incorporated by reference into the contract, and it requires the parties to, whenever a cost accounting adjustment is made, to follow the CAS statute in figuring out whether there should be an equitable adjustment. Okay. So that regulatory provision is part of the contract, and you say that that regulatory provision necessarily incorporates the statutory standards. That's correct. Okay. That's a sufficient answer to my question. Thank you. Judge Moore, if there's no other questions, I'll reserve the balance for rebuttal. Okay. Let's hear from the government. Thank you, Your Honor, and may it please the court. The court should affirm the trial court's decisions because the trial court correctly held that Boeing waived its claim and that the trial court lacked jurisdiction to hear Boeing's illegal execution claim premised on a contract. Now, as an initial matter with respect to waiver, Boeing knew of the purported illegality of what it claims is the illegal nature of FAR and that Boeing contends for various reasons that absolutely no challenges could have ever made any difference. But the point is that it never even tried. It provided comments to the FAR Council about its views in offsetting in approximately 2000 at appendix pages 651 to 52, had presumptive knowledge of the regulation through the rule's implementation three years before it entered into the contract, and it exchanged emails about FAR 30.606 six months before entering into the contract. They did not address these emails in their reply, and the emails are set out at appendix pages 857 through 59. Counsel, this is Judge Toronto. What do you think the mechanism for getting the contract to incorporate an aggregation provision contrary to 606 would have been? Well, certainly, Your Honor, they would have had to raise the challenge at the time of contract formation. Tell me what you mean by raise the challenge in a way that indicates that there was a realistic possibility in so raising the challenge of securing the desired relief, assuming, obviously, that they would be right on the merits. Assuming that they would be right on the merits, first, they'd have to raise it to the contracting officer. And admittedly, this is a non-waivable provision and that it is included in the regulations that interpret the cost-counting standards, and it's not something that the contracting officer has discretion to apply. And so it would have to make some sort of judicial challenge as applied challenge, raise the issue. Right. So what sort of judicial challenge do you think Boeing might have, could plausibly have made? Boeing could have raised a protest, and Boeing could have raised possibly another, at least reserved its rights, or made some sort of effort to reserve its rights as to its challenge to the provision, and then proceeded on the contract. And then... I'm sorry, let me just ask about this reservation. Reservation would do what exactly when the had zero discretion. I don't understand why that's something other than an empty form of words. Your Honor, the fact is I simply don't know what the outcome would have been if Boeing raised this in 2008, which is the reason why it would have had to raise the issue at that time. That's the entire point of... But another way to look at it is that you're making an argument and the that there was a waiver, which means a bypass of an available opportunity, which seems to me to require some establishment of what opportunity there was that was plausibly available to... at the time of entry into the contract. And I'm not sure that you've identified what that is. Well, again, Your Honor, they could have raised a protest. They could have raised before the court some sort of as-applied challenge as soon as they entered into the contract that this provision is unenforceable. They could have raised... This is Judge Chen. Even before the regulation was actually applied against this contractor, they could have nevertheless raised an as-applied challenge to this regulation at the time of entry into the contract? I'm uncertain if they could have raised it at the exact time, Your Honor. Certainly when... Right. I mean, I can see the bind you're in a bit because, I mean, all too often we see the government taking a position that contractors don't have standing or they lack rightness for any allegation that they try to raise in a bid protest. And, you know, as I understand it, this isn't a facial challenge to the regulation that they're making. They're making an as-applied challenge. And it didn't get applied till many, many, many years into the performance of the contract. That's why I'm trying to figure out if you can't tell us that they definitively would have had standing, and any challenge to this regulation, in fact, would have been right at the time of the bid, then I'm wondering how can we say that this was, in fact, waived when they didn't file a protest to this non-negotiable regulation? Well, I would make two points there, because I think this is a challenge to the entire regulation. It's three breach of contract claims request that the court not only invalidate the regulation as applies to the contract here, but also invalidate the regulation as it applies to all of its contracts throughout the entire government. That type of challenge is an APA challenge that can't be raised in the first instance, the manner that Boeing attempts to do so approximately nine years after it entered into the contract. The second is that this is somewhat egregious in terms of a contractor that is sitting on its right, quote, unquote, knowing that this regulation is illegal, but not even raising the issue to the contracting officer to say, we don't think that this should apply, because we believe it is illegal and contrary to the CAS. In DHS, the regulation was expressly written into the contract, right? Correct. So the contractor there knew about this regulation entering into the contract, and nevertheless, this court held that the government's attempt to argue that they couldn't argue against the regulation at a later date was a frivolous and I will note that the trial court's decision below, which did extensively discuss waiver, was decided approximately two months before blue and gold. But the court's decision in DHS HMO is in the last approximately page of the decision under a section titled reformation was proper, and gives no explanation why the argument is frivolous. Was it frivolous because the waiver frivolous because the section was incorporated into the contract and therefore DHS knew about it? Was it frivolous for another reason when it says it's non-negotiable? What exactly does that mean? There's no explanation as to why waiver... What could be the possibilities of how to understand the statement in that opinion that says the non-reconciliation regulation was non-negotiable? To me, that strongly suggests that the contractor in that case would have been futile to raise any kind of challenge or bicker about the regulation at the time of entering into the contract. What's another different way of thinking about that sentence? Well, if they're talking about the non-negotiability of the regulation in the FAR itself or in the contract itself, that would be one question first, and understanding that they are virtually identical. But the fact is that there has to be a question as to the interpretation of it underscores the point that... Well, that's my question. I don't understand how there's some ambiguity in the opinion, and I'm asking you to explain to me where is the ambiguity in the opinion? Well, simply put, the non-reconciliation regulation was non-negotiable. That's what it says. Again, is it non-negotiable because there was no way to challenge that, for instance, through the FAR, through the regulation itself? Was there no way to challenge that in the contract? Was there no way to discuss that with the contracting officer? Was there no way to protest that at the beginning? Or was there... Why did they not protest? There's... I certainly understand Your Honor's point, but simply without any explanation as to whether this sort of rule that Boeing attempts to formulate based on a three-sentence explanation of waiver in GHS-HMO that directly conflicts with it, it's very difficult to understand why it must be applied or in what way. And with respect to... So is it the government's position that there's just something too murky about this paragraph that it doesn't have any precedential value at all? There's no takeaway principle from this paragraph in GHS? Well, it's the government's position that, for example... What's the best reading of that paragraph in the government's view? The best reading of the paragraph is that it applies simply to this case, not to all future cases. And therefore, it does not have precedential value, particularly when it conflicts with blue and gold. And if you look to, for instance, Galloway Farms, which this is... For example, in Galloway Farms, the court discussed that there was insufficient discussion... Or I'm sorry, in Counties Cook, the court explained that in Galloway Farms, there was insufficient discussion of 28 U.S.C. Section 1631 in a very short manner, very similar to the waiver discussion in GHS-HMO. And the court held in Counties Cook that it was insufficient to provide any type of rule or explanation. And because the waiver discussion is not squarely addressed, it's not fully explored... Could we get to the patent ambiguity rule? Yes, your honor. Is there a case that you're aware of, I'm not aware of, where if a contractor believes that a regulation on its face conflicts with the plain meaning of a statute, that that qualifies as a patent ambiguity that must be raised at the time of bidding? I'm not aware off the top of my head of a case that refers simply to a conflict with a regulation, but certainly that's something that we'd be happy to provide further briefing on. Right. I didn't see anything in your briefing nor the other side's briefing that suggested that is the kind of thing that qualifies as a patent ambiguity. I always tend to think of it as, well, maybe there's conflicting statements in the solicitation as to what is the quantity of requested items or something like that, or what is the scope of the work? And there's two different statements that seem to conflict with each other. That's the kind of thing that seems like a very clear on its face ambiguity that the rule in cases like blue and gold is trying to induce people to clear up on the front end rather than the back end. I've never heard of a situation where a regulation on its face that arguably conflicts with a statute on its face is where we would all be invoking the patent ambiguity rule. Well, and here, Your Honor, this is a very unique circumstance where Boeing by its own concession stated in all of its pleadings, and again, at the email that appendix pages 857 through 59, that this is something that it understood to be obviously illegal and contrary to the FAR. And so here, the patent ambiguity is one of Boeing's own making or Boeing's own understanding that it chose to stay silent over. So this is a very, in this particular circumstance, where the contractor admittedly knew of something that it believed to be illegality and sitting on its right. That's the main reason for the patent ambiguity and the waiver doctrine is to prevent these types of situations where a sophisticated contractor like Boeing simply did nothing. And then just rolling it back into a lot of the original questioning, this regulation was non-negotiable. So what could the contracting officer have done at the time if the contractor had said, wow, we have a patent ambiguity here between this regulation and the statute? As I understand it, everybody agrees on this call that the contracting officer could do nothing. The contracting officer could do nothing, which is why Boeing had to raise a judicial challenge at that time, and it did not. And my time is up. Counsel, before you sit down, can I, I want to ask you to go over one thing I know you've gone over already, but just so I have your answer clear in my mind. And then I want to ask you to address the illegal exaction argument as well. The first question I have for you is, so what could the, what relief could the contracting officer, the contracting officer have possibly given Boeing regarding their concerns about the FAR regulation? I mean, the contracting officer couldn't, for example, say, okay, we'll exempt this contract from that FAR regulation. Could he? Did the officer have that personal authority? He did not, Your Honor. So what relief did you say, I'm just trying to understand, what relief does the government believe the contracting officer could have provided if Boeing had made this challenge below? To my understanding, the contracting officer had no discretion to provide any relief, and that is why Boeing needed to raise its challenge in a judicial forum at that time. So, so your argument isn't that they have waived it by failing to raise the issue with the that this provision was illegal. It should have raised the issue to the contracting officer, but yes, there's nothing the contracting officer could have done. It would have been a precursor to a judicial challenge. So it would have been futile for them to raise it to the contracting officer, because if the contracting officer couldn't have done anything about it, it would have been futile. In front of the contracting officer, yes, which again is why they needed to raise the judicial challenge. You mean raise a judicial challenge, you mean a Title V action, right? You're talking about a separate action, not in the context of the application in this contract. You're saying if they want some sort of declaration of broad inapplicability, they should have raised that in some sort of Title V action? Is that the judicial action you're referring to? You say they should have raised it in a judicial action. I'm trying to understand what that judicial action is that you're talking about. Well, Your Honor, first, they could have protested, as we discussed, that they could have raised an APA challenge in district court as well, if they were looking to invalidate the entire regulation. But an APA challenge in district court doesn't get you to waiver, right? That has nothing to do with whether they waived in this case by not raising it in front of the contracting officer, right? Yes, Your Honor. It goes, however, to the fact that Boeing apparently threw up its hand years ago and said, okay, we think that this is illegal, we're going to do nothing, wait for nine years, and then bring the challenge. Okay. Let me ask you, if you don't mind, just quickly address the illegal exaction. I plan on asking on rebuttal, you're opposing counsel, and so I don't want you to not have an opportunity to present your argument on whether or not the Court of Federal Claims had jurisdiction over an illegal exaction claim. Thank you, Your Honor. And no, it did not. The trial court correctly held that it did not. The illegal exaction, it's a deprivation of property without due process. And those claims can only arise under Tucker Act jurisdiction if there is a statute that by expressly or by necessary implication entails the return of money. And the CAS is not money mandating in that manner, because to get to the CAS, there must first be a contract with the government. And here, the contract- This is Judge Chen. Just to get a little more specific, I believe the other side cites New York Life, and I did not see a money mandating statute in New York Life to justify that illegal exaction claim. I believe it was seeking a return on a tax deposit. Was there a money mandating statute in that case? I do not know off the top of my head, Your Honor. My apologies. They also cite Ontario Power. Is that something you're familiar with? Yes, Your Honor. And I believe Ontario Power cited back to Cypress Amex, which was based on a money mandating statute, if I'm not mistaking the case. Okay. I think we have your argument, counsel. Let's go ahead and give opposing counsel, Mr. Kirk, his rebuttal time. Thank you, Your Honor. Thank you, Judge Moore. On patent ambiguity, Judge Chen, in addition to the fact that the contracting officer couldn't have done anything about it had Boeing raised it, all of this court's patent ambiguity cases all involved ambiguities within the four corners of the contract. Here it's undisputed that the challenge regulation is not in the contract. My colleague, Ms. Murdoch-Park, could not definitively say that any bid protest was right, and that's because it clearly wouldn't have been right because it might not even come up. My colleague suggested that Boeing could have brought an as-applied challenge. That's what we did. At the first moment that this regulation was applied to these contracts, to this contract, Boeing challenged it using the mechanism provided in the CAS statute itself. Section 1503A says you're to bring a dispute under the Contracts Dispute Act. Judge Moore, a Title V action was not available for three different reasons. Number one, Section 1503G of the CAS statute expressly provides that the challenges to the price adjustment, which is the merits here, are not subject to the APA provision in Title V authorizing judicial review. Second reason, the APA itself provides that the review is not available when you have an adequate remedy in another court, and here under Section 1503A, we have a remedy in the Court of Federal Claims under the CDA. Third reason, in the Texas Health case from 2005, this court squarely held that contractors may not convert a CDA claim into a regulatory challenge under the APA. That case involved a challenge before the fact to the same regulation that was ultimately invalidated in the CDA under a CDA action in GHS-HMO, and the contractor tried to challenge the regulation in federal district court under the APA, but this court held that the challenge was governed exclusively by the Contracts Disputes Act, and an APA challenge was unavailable. Judge Moore, our position on the money mandating statute requirement in the illegal exaction claim is that New York life is positive. Judge Rader's dissent in that case specifically argued that the claim should fail because there was no money mandating statute, but the majority held following a long line of cases going back to the Court of Claims decision in Eastport, and specifically approved by the Supreme Court in Teston, that an illegal exaction claim could proceed without a money mandating statute if it's a case in which the government has forced the private plaintiff to give the government the money, and all the plaintiff is trying to do is get it back. Mr. Kirk, this is Judge Sorrento. Can I just ask this? Do I understand correctly that some of the money that you are claiming Boeing has paid, but not all of it, and if that's true, does your illegal exaction claim apply only to your effort to secure back the, I don't know, $8,900 and change per month payment, or does it also apply to the yet unpaid monthly payments? To answer part one of your question, you're correct. Only some of the money has been paid to date. I don't know the exact amount, but it's accruing, as you said, at $8,900 a month, and in light of that, you're also correct that the judgment, assuming we prevail on the merits in this case, would be limited to a judgment for the amount that the government actually has. We would hope that with a definitive judgment, the government would no longer insist that future payments be made, but if they did, we would have the ability under the Indiana, Michigan line of cases, to spent fuel cases, to bring follow-on suits to recover follow-on payments if the government indeed forces to make those. Mr. Kirk, this is Judge Chen. Last question on the illegal exaction claim. I believe you pled that in the alternative to your contract claim. If we were to hypothetically reverse the claims court on the CDA claim, what would be the purpose of continuing on with your illegal exaction claim? In other words, would we need to address that? Judge Chen, I think you would have to address it, and here's why. The only thing before you on the contract claim is the trial court's holding that we waived it. We obviously have not litigated in the court below on the merits of that claim, and while it's hard for me to conceive of how we could lose on the merits of the contract claim and yet not on the illegal exaction claim, I don't want to... We pled them in the alternative for a reason. If there's some technical reason not related to the core question of whether the statute forbids the government's regulation that somehow knocked out a contract claim, we would still want to proceed on our illegal exaction claim. I think you'd be in a different profile if both questions were up here on the merits. In that case, it may not be necessary to address them both, but given the procedural profile the case is in, we would respectfully ask you to address them both. So is it fair to characterize your argument as, we're not sure if we need the illegal exaction claim, we're not sure if there are any differences between it and the contract claim, so please get both of them back in? Yes, Judge Moore, but I think that's legitimate given the state of the litigation we're in. We're at the complaint filing stage. We filed a complaint. It's standard practice for a plaintiff to assert alternative causes of action. We clearly think we're right on both of them, but obviously we can't get a double recovery if we prevail on one but not the other. We would be made whole. So at this early pleading stage, I believe we're entitled to maintain both of our causes of action. Okay, counsel, anything further? If the court has no further questions, I'm prepared to subside. Thank you, Judge Moore. Okay, I thank both counsel. The argument was adjourned. The honorable court is adjourned until tomorrow morning at 10 a.m.